UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HORMEL FOODS CORPORATION HOURLY EMPLOYEES' PENSION PLAN, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>MARIE E. PEREZ,<br><br>Defendant. | Case No. 1:22-cv-00879-JLT-EPG<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT (1) HORMEL'S MOTION FOR DEFAULT JUDGMENT BE DENIED; (2) PLAINTIFFS' BILL OF COSTS BE TERMINATED AS MOOT; AND (3) THIS ACTION BE DISMISSED<br><br>(ECF Nos. 14, 18, 19, 25)<br><br>OBJECTIONS, IF ANY, DUE WITHIN 14 DAYS |

## I. INTRODUCTION

Plaintiffs Hormel Foods Corporation Hourly Employees' Pension Plan (the Plan) and Hormel Foods Corporation (Hormel) filed this action on July 15, 2022, against Defendant Marie E. Perez. (ECF No. 1). Asserting jurisdiction under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001, *et seq.*, Plaintiffs seek to recover money mistakenly paid to Defendant, who shares the same name as a Hormel employee.

The matter is now before the Court on Hormel's motion for default judgment.[1] Because the facts alleged do not establish a claim under the ERISA statute at issue, the Court will recommend that the motion for default judgment be denied, that Plaintiffs' accompanying bill of

---

[1] As explained below, although both Plaintiffs initially moved for default judgment, only Hormel seeks default judgment now.

costs be denied as moot, and that the action be dismissed.[2]

## II. BACKGROUND

The complaint alleges original jurisdiction over this matter under 28 U.S.C. § 1331 because this action purportedly falls under ERISA. *See also* 29 U.S.C. § 1132(e)(1) (generally providing for federal jurisdiction in ERISA cases). The Plan was established in 1956 and was amended in 2020 to include a Lump Sum Widow Program, which gave eligible participants the right to receive a lump sum payment or an immediate annuity of their vested accrued benefits. To receive a lump sum payment, a participant had to make a written election on a form.

In June 2020, Hormel sent the form to former employees who were deemed eligible participants. "Due to an administrative error, Hormel inadvertently sent the [f]orm to Defendant at 1110 Kaweah St., Hanford, CA 93230. . . . Hormel should have sent the Form to a different Marie. E. Perez, who worked at the Hormel plant in Fremont, California." (ECF No. 1, p. 3). That form contained an election to "receive [a] lump sum payment of $20,115.77 in September 2020 . . . in cash." (ECF No. 1, at p. 153). The form also stated, "By signing this form and inserting the last four digits of my Social Security Number in the space provided, I certify that I am the person named above, that the information in Section 2 of this form is correct and that I have elected to . . . receive my benefit under the Plan as a lump sum payment." (ECF No. 1, at p. 154). Defendant signed the form, including the last four digits of her social security number and telephone number, and returned the form to Hormel.

After receiving the returned form, Hormel mailed a check to Defendant for $15,690.30 ($20,115.77 minus federal and state taxes), and on about October 15, 2020, Defendant cashed it at a check cashing company called Cash 1.

Eventually, Hormel discovered that it sent the money to the wrong "Marie Perez" and asked Defendant to return the money. According to the complaint, Defendant told a Hormel employee "that she thought the Check was for something else and that she should cash it, but did not explain what she meant by that." (*Id.* at 4). Defendant placed some or all of the Plan's assets

---

[2] The motion has been referred to the undersigned pursuant to 28 U.S.C. § 636 and Local Rule 302(c)(19) because a motion for default judgment is considered a dispositive matter that requires the issuance of findings and recommendations. *See Livingston v. Art.com*, Inc., No. 3:13-CV-03748-CRB, 2015 WL 4307808, at *2 (N.D. Cal. July 15, 2015).

in a bank account. Defendant has not returned any of the funds, leading Plaintiffs to file this action.

Plaintiffs' complaint asserts two causes of action under ERISA: (1) a claim under 29 U.S.C. § 1132(a)(3) for equitable relief; and (2) a claim under § 1132(a)(2) for breach of fiduciary duty. As for relief, the complaint seeks a constructive trust and equitable lien on the $15,690.30; an equitable accounting of all funds received; "equitable restitution, and the disgorgement, return, and recoupment of the $15,690.30 mistaken payment . . . as well as any gains earned through the use of such sums"; and costs. (*Id.* at 6).

Although Defendant appeared at a conference early in the case, and the parties tried to settle the matter, Defendant has since failed to respond to the complaint or participate in this case, leading Plaintiffs to seek and obtain a clerk's entry of default under Federal Rule of Civil Procedure 55(a). (ECF Nos. 8 - 12).

On March 28, 2023, the Court set a deadline for Plaintiffs to move for default judgment under Rule 55(b)(2), advising Plaintiffs of the basic requirements of such a motion, such as establishing subject-matter jurisdiction and the existence of a claim, and emphasizing the importance of providing developed argument and citation it the motion. (ECF No. 13). Plaintiffs filed their motion for default judgment on April 28, 2023, but generally failed to offer developed supporting argument. (ECF No. 14). Accordingly, the Court gave Plaintiffs the opportunity to file a supplement. (ECF No. 15). After being granted an extension of time, Plaintiffs filed a supplemental memorandum on May 31, 2023. (ECF No. 18).

The Court held a hearing on June 16, 2023, where counsel for Plaintiffs appeared. (ECF No. 21). Based on questions raised at the hearing, the Court granted Plaintiffs leave to file a second supplement. (ECF No. 22). After being granted an extension of time, Plaintiffs filed a second supplemental memorandum on July 21, 2023. (ECF No. 25).

Plaintiffs filed a certificate of service for both the motion and supplements; however, Defendant has filed no response to any of these filings. (ECF Nos. 14, 18, 25); *see* Local Rule 230(c) (providing 14 days for an opposition brief to be filed).

\\\
\\\

### III. LEGAL STANDARDS

When a party applies to the Court for a default judgment under Rule 55(b)(2), the Court may hold a hearing to conduct an accounting, determine damages, establish the truth of allegations by evidence, or investigate any other matter. Additionally, the Court may rely on evidence submitted in support of the motion. *See Millner v. Woods*, No. 1:16-CV-01209-SAB-PC, 2017 WL 6016681, at *3 (E.D. Cal. Dec. 5, 2017) ("The court has discretion to determine whether evidence to support a claim for damages [in a motion for default judgment] should be presented at a hearing, or alternatively, whether a review of detailed affidavits and documentary evidence is sufficient.").

In reviewing a motion for default judgment, the Court must undertake an in-depth analysis to make sure that default judgment is properly entered. *See Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986) (noting seven factors that courts may consider before exercising discretion to enter default judgment). While well-pleaded factual allegations, except those related to damages, are accepted as true, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992); *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (noting that, factual allegations, "except those related to the amount of damages," are accepted as true).

### IV. ANALYSIS

**A. Scope of Motion for Default Judgment**

As an initial matter, the Court notes that the scope of the motion for default judgment has narrowed through Plaintiffs' supplemental briefing. As discussed above, both Plaintiffs—the Plan and Hormel—initiated this case. (ECF No. 1). Moreover, both Plaintiffs initially moved for default judgment. However, the second supplement states that only Hormel is currently seeking default judgment. (ECF No. 25, p. 3, n.1 – "The Plan was also named as a separate Plaintiff in case there were any ambiguities about the proper party. But Hormel is the party seeking this default judgment under ERISA § 502(a)(2).").

Similarly, the complaint and motion for default judgment initially sought relief on two claims: (1) a 29 U.S.C. § 1132(a)(3) claim for equitable relief; and (2) a § 1132(a)(2) claim for

4

breach of fiduciary duty. (ECF No. 1, pp. 5-6; ECF No. 14-1, p. 10). But Plaintiffs' second supplement states that Hormel is now only seeking default judgment on its claim for breach of fiduciary duty under § 1132(a)(2), also known as a § 502(a)(2) claim.[3] (ECF No. 25, p. 2, 6 – "For the purposes of it default motion and to simplify matters, Hormel is only seeking a default judgment on its claim under ERISA § 502(a)(2)." "Hormel emphasizes that it is not currently seeking a default judgment on its separate and distinct claim under ERISA § 502(a)(3).").

Accordingly, the Court will limit its review to Hormel's claim for breach of fiduciary duty under § 1132(a)(2).

**B. ERISA Generally**

ERISA "subjects to federal regulation plans providing employees with fringe benefits. ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90 (1983). ERISA "induc[es] employers to offer benefits by assuring a predictable set of liabilities, under uniform standards of primary conduct and a uniform regime of ultimate remedial orders and awards when a violation has occurred." *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 379 (2002). And "the detailed provisions of § 502(a) set forth a comprehensive civil enforcement scheme" for ERISA claims. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987).

ERISA provides for certain causes of actions related to employee plans but not actions outside of the terms of the statute:

> Courts may not "infer [additional] causes of action in the ERISA context, since that statute's carefully crafted and detailed enforcement scheme provides 'strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly.'" *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 254, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993) (quoting *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146-47, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985)). Under ERISA, the issue is not whether the statute bars a particular cause of action, but rather "whether the statute affirmatively authorizes such a suit." *Id.* at 255 n. 5, 113 S.Ct. 2063.

*Gabriel v. Alaska Elec. Pension Fund*, 773 F.3d 945, 953-54 (9th Cir. 2014); *Pilot Life Ins. Co.*, 481 U.S. at 54 ("The deliberate care with which ERISA's civil enforcement remedies were drafted and the balancing of policies embodied in its choice of remedies argue strongly for the

---

[3] *See Farr v. U.S. W. Commc'ns, Inc.*, 151 F.3d 908, 916 n.5 (9th Cir. 1998), *amended*, 179 F.3d 1252 (9th Cir. 1999) (noting that § 502(a)(2) of ERISA is codified at 29 U.S.C. § 1132(a)(2)).

conclusion that ERISA's civil enforcement remedies were intended to be exclusive.").

As noted above, there are a variety of considerations before entering a default judgment. *See Eitel*, 782 F.2d at 1471. Here, the Court finds two factors—the merits of Hormel's substantive claim and the sufficiency of its complaint—dispositive. Essentially, these "factors require [a] plaintiff to state a claim on which plaintiff can recover." *OL USA LLC v. TTS Int'l LLC*, No. 2:21-CV-1541 WBS DB, 2022 WL 2208527, at *2 (E.D. Cal. June 21, 2022), *report and recommendation adopted*, (2022 WL 4450658 (E.D. Cal. Sept. 23, 2022).

### C. Breach of Fiduciary Duty – § 1132(a)(2)

Section 1132(a)(2) provides for a cause of action "by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title." In turn, § 1109(a) provides as follows:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary. A fiduciary may also be removed for a violation of section 1111 of this title.

29 U.S.C. § 1109(a).

Hormel contends that Defendant is a fiduciary with respect to the Plan who breached a responsibility, obligation or duty imposed upon fiduciaries by returning the form and keeping the money deposited in her account. The Court thus examines whether Defendant qualified as a fiduciary with respect to the Plan.

ERISA defines a fiduciary as follows:

> Except as otherwise provided in subparagraph (B), a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan *or exercises any authority or control respecting management or disposition of its assets* . . . .

29 U.S.C. § 1002(21)(A)(i) (emphasis added).[4] Furthermore, the Supreme Court has explained

---

[4] Additionally under ERISA, a person can also be a "named fiduciary," *i.e.*, "a fiduciary who is named in the plan instrument, or who, pursuant to a procedure specified in the plan, is identified as a fiduciary (A) by a person who is an employer or employee organization with respect to the plan or (B) by such an employer and such an employee organization acting jointly." 29 U.S.C. § 1102(a)(2). Hormel does not assert that Defendant is a named fiduciary.

that, "ERISA . . . defines 'fiduciary' not in terms of formal trusteeship, but in functional terms of control and authority over the plan, *see* 29 U.S.C. § 1002(21)(A)." *Mertens*, 508 U.S. at 262. "In every case charging breach of ERISA fiduciary duty, then, the threshold question is not whether the actions of some person . . . adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000).

Here, Defendant was not an employee of Hormel. She was never designated as a fiduciary to the Plan. She was not informed of any responsibilities, obligations, or duties imposed upon her by the Plan. She did not have control over any assets in the plan. The form sent to her did not indicate that she was a fiduciary, inform her of any duties related to the Plan, or ask her to undertake any responsibilities by returning the form. On the contrary, it asked her to certify that "I am not currently employed by Hormel Foods or an affiliate of Hormel Foods." (ECF No. 1, at p. 154).

Hormel argues that Defendant nevertheless qualifies as a fiduciary under the Plan because she returned the form and kept the payment. In determining whether such actions render Defendant a fiduciary under the plan, the Court begins with a case containing relatively similar factual circumstances, *Cent. States, Se. & Sw. Areas Pension Fund v. Rodriguez*, No. 18-CV-7226, 2021 WL 131419 (N.D. Ill. Jan. 14, 2021). In that case, the plaintiffs were an ERISA pension fund and a trustee of the plan. *Id.* at *1. The defendant was the widow of a plan participant. *Id.* at *2. Importantly, because the marriage between defendant and the plan participant occurred *after* the plan participant's retirement, defendant was "not eligible to elect surviving-spouse benefits under the Plan." *Id.* Moreover, both the plan participant and the defendant were informed of this in July 2014. *Id.* Accordingly, when the plan participant died, his eligibility for pension benefits under the plan ceased. *Id.* Before his death, these benefits were deposited directly in the plan participant's account, where defendant was a joint account holder, with defendant becoming an owner of the account after the plan participant's death. *Id.* Although the plan participant died in May 2016, the fund did not receive notice of his death until January 2017, by which time it had deposited an extra $14,704.56 into the account. *Id.* Ultimately, the fund demanded that defendant return the overpayment, but she declined to do so. *Id.*

7

Among other claims, plaintiffs brought a claim under § 1132(a)(2), alleging that the defendant was "a fiduciary under ERISA by virtue of her 'possession of assets, which in equity and good conscience are property of the plan.'" *Id.* at *5. Plaintiffs' theory was "that once the Fund mistakenly deposited money into the Account, defendant exercised control over the disposition of those assets." *Id.*

In declining to grant summary judgment on this claim, even though defendant offered no opposition, the Court stated as follows:

> First, the Supreme Court has said that ERISA "fiduciary duties draw much of their content from the common law of trusts," such that "the law of trusts often will inform, but will not necessarily determine the outcome of, an effort to interpret ERISA's fiduciary duties." *Varity Corp. v. Howe*, 516 U.S. 489, 496-97 (1996). A basic principle of trust law is that a person "who has not accepted the office cannot be compelled to act as trustee." *Restatement (Third) of Trusts* § 35, comment a (2012). It would be strange, then, for plaintiffs to be able to make a third party an ERISA fiduciary, with all its attendant duties and liabilities, merely by mistakenly depositing money into an account of which the third party is an owner. *But see International Painters and Allied Trades Industry Pension Fund v. Aragones*, 643 F. Supp.2d 1329, 1337 (M.D. Fla. 2008) (granting default judgment against defendant who, while not having agreed to be a fiduciary, had agreed to receive only 60 payments before collecting 130 payments, such that "[i]dentifying Defendant as a fiduciary" was "more than a 'theoretical contrivance.' ").
>
> Second, plaintiffs' theory assumes the money, once deposited into the Account, remains plan assets. Plaintiffs have not shown that assumption is correct as a matter of law. *Cf. Hecker v. Deere & Co.*, 556 F.3d 575, 584 (7th Cir. 2009) (once assets were "transferred to one of the Fidelity entities, they become Fidelity's assets—again, not the assets of the Plans."); *People ex rel. Russell v. Farmers' State & Sav. Bank of Grant Park*, 338 Ill. 134, 137 (Ill. 1930) ("As a rule, when money is deposited in a bank, title to such money passes to the bank. The bank becomes the debtor of the depositor to the extent of the deposit, and to that extent the depositor becomes of the creditor of the bank.").
>
> Finally, even if the Court assumes, without deciding, that the deposits remained plan assets, plaintiffs have not put forth facts establishing as a matter of law that defendant exercised control over the management or disposition of those assets. Plaintiffs have put forth no evidence as to what happened to those funds after plaintiffs deposited them into the Account. Plaintiffs have put forth evidence that defendant was "an" owner of the account, but they do not say whether defendant was the only owner. Furthermore, plaintiffs have also put forth evidence that the Account was frozen as of January 23, 2017; but, by whom and for how long the Account was frozen, the plaintiffs do not say. A reasonable inference of a frozen account is that defendant did not have control over it.
>
> For these reasons, plaintiffs have not shown that they are entitled to judgment as a matter of law on any ERISA claim, and the motion for summary judgment as to

the ERISA claims is denied.

*Id.* at *5-6.

The Court finds this discussion persuasive here, especially the conclusion that a defendant does not become a fiduciary under the statute simply by retaining funds mistakenly deposited in her account. As in *Cent. States, Se. & Sw. Areas Pension Fund*, Defendant has no direct connection to the Plan and did not affirmatively accept the duties and liabilities of being an ERISA fiduciary.

Additionally, the Ninth Circuit has cited approvingly caselaw noting "that fiduciary status should not be imposed unless the individual is 'clearly aware of his status as a fiduciary.'" *Bos v. Bd. of Trustees*, 795 F.3d 1006, 1011 (9th Cir. 2015) (quoting *ITPE Pension Fund v. Hall*, 334 F.3d 1011, 1015, (11th Cir. 2003)). Here, Hormel does not allege that Defendant thought she was acting as a fiduciary of the Plan. Nowhere does Hormel allege that Defendant was informed that she was a fiduciary or was undertaking any responsibilities of a fiduciary. Nor does the form sent by Hormel and returned by Defendant contain any such information.

The Court also looks to Ninth Circuit case law holding that merely receiving plan funds does not make one a fiduciary. *See IT Corp. v. Gen. Am. Life Ins. Co.*, 107 F.3d 1415, 1422 (9th Cir. 1997) ("Authority over a plan's money is not the same thing as being a depository of the money. If the plan's money is deposited in a bank, that does not *ipso facto* make the bank a fiduciary."). Rather, a purpose of ERISA is to ensure "that people who have *practical control* over an ERISA plan's money have fiduciary responsibility to the plan's beneficiaries." *Id.* at 1421 (emphasis added). Here, Defendant did not have practical control over the Plan's money. Instead, she returned a form that offered a payment and kept that payment.

In their briefing, Hormel does not address this caselaw. Indeed, Hormel does not cite to any cases in the Ninth Circuit on the question of whether Defendant is a fiduciary. In support of their position on this issue, Hormel relies on the following out-of-circuit district court cases. (ECF No. 25, p. 4).

The first is *Brantley v. Pepsi Bottling Grp., Inc.*, 718 F. Supp. 2d 903 (E.D. Tenn. 2010). In that case, the plaintiff was a former employee of the defendant and a participant in a long-term disability plan. *Id.* at 907. Plaintiff signed an agreement promising to reimburse the plan if he

received payments from a source outside the plan for the same illness or injury that the plan paid him benefits for. *Id.* at 907-908. Plaintiff eventually received workers' compensation benefits for injuries that gave rise to his claim under the plan. *Id.* at 908. After learning about plaintiff receiving workers' compensation benefits, a defendant claims administrator reduced plaintiff's plan benefits to offset the amount plaintiff had received through workers' compensation. *Id.* at 909. Defendants counterclaimed for breach of fiduciary duty against plaintiff under § 1132(a)(2). In granting summary judgment in defendants' favor on this claim, the Court concluded that "[t]he overpayment made by the LTD Plan to plaintiff is undoubtedly a plan asset" and "[t]o the extent that plaintiff continues to hold the overpayment for his own benefit, and has refused to return that overpayment to the LTD Plan, plaintiff is in breach of his fiduciary duty to the LTD Plan." *Id.* at 915.

The second case is *Health Care Serv. Corp. v. TAP Pharm. Prod., Inc.*, 274 F. Supp. 2d 807 (E.D. Tex. 2003). In that case, the plaintiff was an administrator of an employer sponsored benefits plan and claimed that defendant drug companies, whom it contracted with, engaged in a pattern of overcharging and encouraging the over-prescription of a certain drug. *Id.* at 810, 813. Although plaintiff purported to bring only state law claims, defendants removed the case to federal court alleging preemption by ERISA. *Id.* at 810-11. In agreeing that the claims were preempted, the Court concluded that by allegedly inflating prices of a drug and being unjustly enriched by retaining the profits, "defendants kept and exercised control over the disposition of plan assets that they are alleged to have wrongfully obtained." *Id.* at 813.

The last case is *Int'l Painters & Allied Trades Indus. Pension Fund v. Aragones*, 643 F. Supp. 2d 1329 (M.D. Fla. 2008). In that case, the plaintiffs were an employee benefit plan and a fiduciary. *Id.* at 1332. The defendant "was the assigned beneficiary of the monthly pension benefits of [her husband] under this Plan." *Id.* After the death of her husband, plaintiff was notified that she was entitled to receive a remaining number of payments through April 1996. *Id.* However, due to a purported administrative error, defendant kept receiving payments. *Id.* The plan tried to recover the overpayments, but defendant did not respond to its request. *Id.* Raising a claim under § 1132(a)(2), "Plaintiffs argue[d] that because Defendant exercised complete control over Plan funds erroneously deposited into her account, she breached her fiduciary duty by failing

10

to safeguard the assets for the benefit of the fund and other participants or beneficiaries and deliver them to the Plan when demanded to do so." *Id.* at 1334. Although noting that such a theory was not clearly established, the Court ultimately found that defendant could be considered a fiduciary given that she had given "written consent to receive only sixty benefit payments in the event of her husband's untimely death, as well as the Plan's notice to her after her husband's death of her right to benefits only through April 1996 and the fact of Defendant's refusal to return the funds upon notice of the overpayment error." *Id.* at 1337.

As an initial matter, the Court emphasizes that it is not bound by any of these out-of-circuit district court cases. *See Yong v. I.N.S.*, 208 F.3d 1116, 1119 n.2 (9th Cir. 2000) ("[O]nce a federal circuit court issues a decision, the district courts within that circuit are bound to follow it and have no authority to await a ruling by the Supreme Court before applying the circuit court's decision as binding authority. . . .").

Even so, all of these cases involve alleged wrongdoing by someone with some established relationship to a plan: (1) a former employee and participant in a long-term disability who signed an agreement promising to reimburse the plan if he received certain payments from a source outside the plan; (2) a drug company who entered into a contract with a plan administrator; and (3) a beneficiary of a plan who was forewarned that a certain number of payments were owed but continued to accept additional unwarranted payments. None of these cases involved the unusual situation before the Court—the mistaken payment of Plan benefits to a third party who had no connection to an ERISA plan but signed a form to receive such payments that was intended for someone else with the same name.[5]

Notably, in one of the cases relied upon by Hormel, *Int'l Painters & Allied Trades Indus. Pension Fund v. Aragones*, the Court explained that "not every beneficiary becomes a fiduciary of the plan after receiving and retaining an overpayment or other plan asset to which the

---

[5] Hormel cited a fourth case in a footnote in its second supplement, *Carpenters Pension & Annuity Plan of Philadelphia & Vicinity v. Grosso*, No. CIV.A. 07-5013, 2009 WL 2431340 (E.D. Pa. Aug. 6, 2009), but offered no developed argument about how it applies here. (ECF No. 18, p. 15, n.1). That case concerned a plan beneficiary who wrongfully retained payments to which he was not entitled. *Id.* at *1-3. The Court found that his misrepresentations to the plan in order to receive benefits he was not entitled to made him a fiduciary for purposes of § 1132(a)(2). *Id.* at *6. For the reasons discussed elsewhere, the Court finds this case materially distinguishable based on the beneficiary's established relationship with the plan that suggested he understood his fiduciary responsibilities.

11

beneficiary is not entitled." 643 F. Supp. 2d at 1331. Moreover, the Court acknowledged the above language from *Hall* (which the Ninth Circuit cited in *Bos*) that one cannot become a fiduciary unless she is clearly aware of her status as a fiduciary. *Id.* at 1336. Further, it quoted another case concluding that, "[b]efore fiduciary duty is imposed on an officer, he must have notice, either through clear contractual language or clear, shared intent of the parties." *Id.* (quoting *Int'l Union of Painters & Allied Trades Dist. Council No. 78 Health & Welfare Fund v. Argyros*, No. 8:05–cv1661–T–24TGW, 2007 WL 1577840 (M.D. Fla. May 31, 2007)). While the Court ultimately determined that the defendant in that case could be considered a fiduciary, it was because of evidence of specific consent and notification, which is not present in the case before this Court:

> Here, nothing in the submitted Plan language clarifies Defendant's obligations or responsibilities to the Plan in these circumstances. However, Plaintiffs proffer Defendant's written consent to receive only sixty benefit payments in the event of her husband's untimely death, as well as the Plan's notice to her after her husband's death of her right to benefits only through April 1996 and the fact of Defendant's refusal to return the funds upon notice of the overpayment error. At a minimum, such was sufficient to notify Defendant that any of the Plan's monies received after April 1996 were not hers and reason enough for her to know that she was responsible to the fund and its participants to return the overpayments. Identifying Defendant as a fiduciary in these circumstances is more than a "theoretical contrivance."

*Id.* at 1337.

Based on this law, the Court finds that, even assuming all allegations in the complaint as true, Defendant was not a fiduciary to the Plan. Thus, Hormel has failed to state a claim under § 1132(a)(2).

**V.     CONCLUSION AND RECOMMENDATIONS**

Based on the foregoing, IT IS RECOMMENDED as follows:

1. Hormel's motion for default judgment (ECF Nos. 14, 18, 25) be denied.
2. Plaintiffs' bill of costs (ECF No. 19) be terminated as moot.
3. This case be dismissed for failure to state a claim.
4. The Clerk of Court be directed to close this case.

\\\
\\\

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within fourteen (14) days after being served with these findings and recommendations, Plaintiffs may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiffs are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **October 11, 2023**          /s/ Erica P. Grosjean
                                     UNITED STATES MAGISTRATE JUDGE

13